UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 05-CR-205 (SJ)

-against- : United States Courthouse, Brooklyn, New York

DARRYN ALSTON, : July 22, 2005

Defendant.

- - - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S:

For the Government: ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
One Pierrepont Plaza
Brooklyn, New York 11201
BY: COLLEEN KAVANAUGH, AUSA

For the Defendant: BY: SCOTT AUSTER, ESQ.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 1 2005 ★
BROOKLYN OFFICE

Reported by tape-recording
Transcript produced by
Courthouse Transcription Service, Inc.

THE COURT: Criminal cause for guilty plea, United States of America versus Darryn Alston, Docket No. 50-CR-205 (SJ).

Counsel, please come forward and state your appearances, for the record.

MS. KAVANAUGH: Good morning, your Honor. Colleen Kavanaugh for the United States.

MR. AUSTER: Scott Auster for Defendant Darryn Alston.

Good morning, your Honor.

THE COURT: Good morning, everybody.

Mr. Alston, do you speak and understand English?

THE DEFENDANT: Yes.

THE COURT: Mr. Alston, the reason you are here today is that your lawyer, by placing this matter on my calendar, has indicated that you wish to enter a plea of guilty to a lesser included offence in Count One of the indictment in which you are charged.

Before I may hear any plea of guilty you might choose to offer, I need to make sure you understand that I am not the judge who is presiding over your case. That is United States District Judge Johnson. Judge Johnson is the one who will decide whether any plea of guilty you might choose to offer should be accepted and, if it is, what sentence should be imposed in your case.

I am a magistrate, not a district judge like Judge Johnson, and I do not have the authority under the law to take those steps.

If you wish, you have the absolute right to have it be Judge Johnson who listens to your plea. If that is your choice, there will be no prejudice to you. You'll be permitted to plead guilty before Judge Johnson under the same terms and conditions being offered today on another day that is more convenient to him.

In the alternative, though, I do have the authority to be the judge who listens to you plead guilty if I have your consent and agreement to do so.

If you do agree to proceed before me, I will arrange for this entire proceeding to be recorded on tape and for the tape-recording to be transcribed so Judge Johnson will have a written record of everything that's said here today and he can rely on that when he decides whether to formally accept your plea or how to set your sentence.

Did you understand all of that?

THE DEFENDANT: Yes.

THE COURT: Do you want to give up your right to have Judge Johnson hear your plea and do you agree to proceed instead before me?

THE DEFENDANT: Yes.

THE COURT: Are you making this decision voluntarily and of your open free will?

THE DEFENDANT: Yes.

THE COURT: Did anybody pressure you to agree to this?

THE DEFENDANT: No.

THE COURT: Is this your signature on the consent form?

THE DEFENDANT: Yes.

THE COURT: Did you review the form carefully with your lawyer and understand it before you signed it?

THE DEFENDANT: Yes.

THE COURT: Mr. Auster, are you aware of any reason why your client should not consent to proceed before me for these limited purposes?

MR. AUSTER: No, your Honor.

THE COURT: I find the consent of the defendant knowing and voluntary, and I add my endorsement to the form to reflect my findings.

Mr. Auster, are you appointed or retained in this matter?

MR. AUSTER: Appointed.

THE COURT: Mr. Alston, before I can recommend to Judge Johnson that he accept any plea of guilty you choose to offer today, I have to ask you many questions.

The questions are important. They are designed to make sure you understand what a serious decision it is you are about to make. They are further designed to make sure that the prosecution and the Court are protected because the questions will create a record which will demonstrate that I explained your rights to you, you told me you understood them and that you want to give them up.

And once all of that happens, if you go forward with a guilty plea, it will be legally valid and permanently binding upon you.

So I urge you to listen carefully to my questions. If I ask you anything that you are not sure you understand, I want you to tell me so I can rephrase the question.

If you want to interrupt me at any point because you have a question for me or you would like the chance to speak privately with your lawyer, that is fine. Just speak up and I will give you the opportunity. Is that clear?

THE DEFENDANT: Yes.

THE COURT: It is very important that you tell the truth today, and I will therefore direct you be placed under oath before we proceed.

(Whereupon the defendant was duly sworn and testified as follows: )

THE COURT: You are a member of Mr. Alston's family and if you would like, you can come in closer. If you would like to hear the proceeding, you can take a seat at counsel table. Maybe you would be more comfortable there.

Well, that is the prosecutor's pile.

Okay. Can you hear from over there?

Okay. All right.

MR. AUSTER: Thank you, your Honor.

THE COURT: Mr. Alston, now that you've been sworn, when you answer my questions, you are doing so under the penalties of perjury or making a falls statement.

That means that if you lie to me during this proceeding, that does give rise to new charges against you just for that. Is that clear to you?

THE DEFENDANT: Yes.

THE COURT: State your full name.

THE DEFENDANT: Darryn Alston.

THE COURT: How old are you?

THE DEFENDANT: 18.

THE COURT: When did you turn 18?

THE DEFENDANT: November 25th.

THE COURT: Of 2004?

THE DEFENDANT: Yes.

THE COURT: Maybe because the conspiracy continues through January of '05, you contend that the defendant is subject to prosecution as an adult?

MS. KAVANAUGH: Yes, Judge. We've had these conversations, and the government would be able to ratify Mr. Alston's participation in the conspiracy past his 18th birthday.

THE COURT: How far did you go in school, Mr. Alston?

THE DEFENDANT: 8th.

THE COURT: 8th grade.

Was that here in the United States?

THE DEFENDANT: Yes.

THE COURT: Is English your native language?

THE DEFENDANT: Yes.

THE COURT: Are you having any difficulty understanding me today?

THE DEFENDANT: No.

THE COURT: Are you now or have you recently been seeing a doctor or a psychologist or any healthcare professional for any mental or physical problems?

THE DEFENDANT: No.

THE COURT: In the last 24 hours, have you taken any narcotics, drugs, alcohol, medicine or pills?

THE DEFENDANT: No.

THE COURT: Have you ever in your life been hospitalized or treated for drug or alcohol abuse or psychiatric or emotional problems?

THE DEFENDANT: No.

THE COURT: You look like you didn't understand that question.

When you don't understand a question, tell me. I will ask it again and I won't mind. All right?

THE DEFENDANT: All right.

THE COURT: The question was whether you've ever been in the hospital or seen by a doctor for a drug or alcohol abuse problem.

Have you?

THE DEFENDANT: No.

THE COURT: What about for any kind of psychiatric or emotional problems?

THE DEFENDANT: No.

THE COURT: Do you feel healthy, focused and alert and of clear mind today?

THE DEFENDANT: Yes.

THE COURT: Do you understand everything except the one question I repeated that's happened so far?

THE DEFENDANT: Yes.

THE COURT: Mr. Auster, have you reviewed the matter of pleading guilty with your client?

MR. AUSTER: I have, your Honor.

THE COURT: Does he in your judgment understand the rights he will be waiving if he offers a guilty plea?

MR. AUSTER: He does.

THE COURT: Is he capable of understanding the nature of these proceedings?

MR. AUSTER: Yes.

THE COURT: Do you have any doubt about his competence to offer a guilty plea at this time?

MR. AUSTER: No.

THE COURT: Have you alerted him to the maximum and minimum sentence and fine that might be imposed and discussed with him the likely operation of the Sentencing Guidelines?

MR. AUSTER: Yes.

THE COURT: Is it the government's understanding that the defendant is a United States citizen?

MS. KAVANAUGH: Yes, your Honor.

THE COURT: Mr. Alston, have you had enough time to go over your case very carefully with Mr. Auster and have you in fact done that?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied to have Mr. Auster be the attorney who is defending you in this case?

THE DEFENDANT: Yes.

THE COURT: Have you received a copy of the indictment where the charges against you are set forth in writing.

THE DEFENDANT: Yes.

THE COURT: Have you reviewed the indictment carefully with your attorney and satisfied yourself you understand it?

THE DEFENDANT: Yes.

THE COURT: In Count One, you are charged with knowingly and intentionally conspiring or agreeing to work together with other people, including the others named in the indictment, in the distribution of crack cocaine in an amount exceeding 50 grams during the time period between March 2004 and January 2005 and explicitly including the time period after November of 2004.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: In Count Two, you are charged with actually participating in the distribution of that cocaine and doing so within 1,000 feet of a public housing authority.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You have a right to plead not guilty to these charges. You have that right even if you

committed these crimes. Pleading not guilty is never lying or misleading the Court. Every defendant has the right to plead not guilty and thereby exercise his right to trial.

Did you understand me?

THE DEFENDANT: Yes.

THE COURT: If you were to plead not guilty, then under the constitution and laws of the United States, you would be entitled to a speedy and public trial by jury with the assistance of your attorney on all of the charges against you.

Is that clear to you?

THE DEFENDANT: Yes.

THE COURT: At your trial, you would be presumed to be innocent. The prosecution would be required to overcome the presumption of innocence and to prove that you are guilty by competent evidence and beyond a reasonable doubt. You would have no obligation to prove that you were innocent. If the prosecution failed to prove that you were guilty beyond a reasonable doubt, the members of the jury would have the duty to return a not guilty verdict and Judge Johnson would so instruct them.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: That is why juries sometimes return

verdicts of not guilty even though the members of the jury believed the defendant on trial probably committed trials with which he has been charged.

When jurors vote not guilty, they are not necessarily saying that they believe the defendant on trial is innocent. They are saying only I am not convinced beyond a reasonable doubt that the defendant is guilty.

Do you understand that difference?

THE DEFENDANT: Yes.

THE COURT: If you wish to proceed to trial, then during the trial, the witnesses for the prosecution would be required to come into the courtroom and to present their testimony against you right in front of you and your attorney. Your attorney would have the right to question the prosecutor's witnesses on cross-examination. Your attorney would have the right to raise objections when the prosecution attempted to offer evidence against you, and you and your attorney working together would have the right to call witnesses and present evidence and make arguments in your defense during the course of the trial.

Is that clear to you?

THE DEFENDANT: Yes.

THE COURT: If you proceeded to trial, you, yourself, would have the right to testify as a witness in

your own defense at the trial if that's what you wanted to do, but nobody could make you take the witness stand at the trial if you didn't want to do that.

That's because the United States constitution says that no one may be required to say anything self-incriminating.

If you decided that you preferred not to testify as a witness in your own defense at trial, Judge Johnson would instruct the jurors that they couldn't take your decision to remain silent into account or hold it against you in any way when they decided what their verdict should be.

Is that clear to you?

THE DEFENDANT: Yes.

THE COURT: On the other hand, if you offer a plea of guilty and Judge Johnson decides that it should be accepted, you will as a result be giving up your constitutional right to a trial and all of the other rights that I have been telling you about today.

There will be no further trial of any kind in your case. You'll have no right to appeal from the conviction or the judgment of guilty that will be entered against you. Judge Johnson will essentially be convicting you based upon your admission of guilt during the proceeding we are holding right now. That will free the

prosecution of any duty to prove anything about what you've done.

Is that clear to you?

THE DEFENDANT: Yes.

THE COURT: If you went to trial, and the jury found you guilty by their verdict, you would have a right to take an appeal and ask a higher court, we call the Court of Appeals, to review the legality of all of the proceedings that led up to your conviction.

But when you plead guilty, your conviction is based upon your own decision to admit your guilt with your own words, and as a result, there is no right to appeal from the conviction that results.

Did you follow that?

THE DEFENDANT: Yes.

THE COURT: If you want to plead guilty, I am going to have ask you questions about your involvement in distributing crack cocaine so that Judge Johnson and I can be satisfied that your plea of guilty is based upon real facts.

If you decided you want to answer my questions, which you don't have to do unless you want to plead guilty, but if you decide that you want to answer my questions and in doing so you admit your guilt, by virtue of that decision, you will be giving up your

constitutional right not to incriminate yourself.

Did you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you still wish to give up your right to trial and all the other rights I've told you about today?

THE DEFENDANT: Yes.

THE COURT: I am asking you, now that I've explained to you all of the rights that you have, as you stand here before me now, do you want to give all of those rights up and plead guilty instead of exercising them?

THE DEFENDANT: Yes.

THE COURT: You still want to plead guilty?

THE DEFENDANT: Yes.

THE COURT: It is my understanding that you are making this decision under the terms of a written agreement you've made with the prosecution?

THE DEFENDANT: Yes.

THE COURT: And I've had that agreement marked as Court Exhibit 1 and I am going to ask Mr. Auster to look at it with you now.

Do you recognize the agreement that I've put before you and, in particular, did you sign the last page with your own hand?

THE DEFENDANT: Yes.

THE COURT: Before you signed the document, did you read it carefully?

THE DEFENDANT: Yes.

THE COURT: Did you go over it carefully with Mr. Auster?

THE DEFENDANT: Yes.

THE COURT: Did you understand what you were signing?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about anything it says that you would like to ask me or review with Mr. Auster before you go forward?

THE DEFENDANT: No.

THE COURT: Everything in that document is clear to you, Mr. Alston?

THE DEFENDANT: Yes.

THE COURT: Does that written agreement contain a full and accurate statement of everything that you and the prosecution have agreed to about this case?

THE DEFENDANT: Yes.

THE COURT: Did anybody promise you anything in return for pleading guilty that is not written down in your agreement?

THE DEFENDANT: No.

THE COURT: May I have the agreement back,

Mr. Auster?

The agreement says that you wish to plead guilty to what lawyers call a lesser-included offense within Count One, the conspiracy charge.

What I mean by lesser-included offense is this. The indictment charges you with being part of a conspiracy or a group of people working together to distribute more than 50 grams of crack cocaine. You are being invited by the prosecutor to plead guilty to being part of a conspiracy, a group of people working together, to distribute crack cocaine, but of no specified amount.

Do you understand the charge that you are being asked to plead guilty to by the prosecution?

THE DEFENDANT: Yes.

THE COURT: I need to review with you the penalties which confront you if you decide to plead guilty to this charge.

Are you ready.

THE DEFENDANT: Yes.

THE COURT: The statute you are accused of violating authorizes Judge Johnson to impose a sentence of incarceration of up to 20 years.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: In addition, the law requires Judge

Johnson to sentence you to a term of supervised release of at least three years and authorizes a supervised release term as long as the rest of your life.

Is that clear?

THE DEFENDANT: Yes.

THE COURT: Supervised release is a period of time which will start to run only when you finish serving whatever prison sentence Judge Johnson imposes upon you.

Once you get out of prison, you won't really be free because you'll be subject to the close supervision of a probation officer under supervised release.

You will have to follow a long list of rules, more than I can list for you today. They will include, but not be limited to, restrictions on your right to travel freely and requirements that you report regularly to your probation officer, that you answer your probation officer's questions honestly, that you make every responsible effort to follow any instructions your probation officer gives you, and that you commit no new crimes whatsoever while on supervised release.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: If you break any of the rules of your supervised release, that will be grounds for the government to seek your arrest, to bring you back to the

Court and to ask Judge Johnson to impose an additional sentence of up two years of incarceration on this drug charge even though you had finished your original sentence, even though you had been out on supervised release for a substantial period of time.

That would be a new two-year sentence with no credit for the time you spent serving the original sentence or while on supervised release.

Did you follow all of that?

THE DEFENDANT: Yes.

THE COURT: You could be fined up to $1 million and you will be required to make a $100 special assessment at or about the time you are sentenced.

Is all of that clear to you?

THE DEFENDANT: Yes.

THE COURT: I want to turn your attention to what we call the Sentencing Commission guidelines. These guidelines will lead Judge Johnson to calculate a range of months that the guidelines suggest are an appropriate sentence or the appropriate sentence in your case.

Judge Johnson must take that suggested range of months very seriously into account, very carefully into account, and give it great weight when he decides what your sentence should be.

Do you understand me so far?

THE DEFENDANT: Yes.

THE COURT: Have you talked about these guidelines carefully with Mr. Auster?

THE DEFENDANT: Yes.

THE COURT: The prosecutor estimates that the guideline range Judge Johnson will calculate will be 46 to 57 months' long.

That estimate, though, as carefully as I am sure it was reached, is not binding on Judge Johnson. He'll make his own decision, and he hasn't done that yet.

He won't make his decision until he receives a Presentence Report about your case. The report hasn't even been written yet.

Once the report is ready, you and your lawyer and the prosecutor will appear before Judge Johnson. You'll have an opportunity to speak to the judge. You can tell him if there is anything in the report that you think is wrong, and then Judge Johnson will make his own guideline calculation, and it could be that he decides that an even longer guideline range than the one predicted by the government should be applied to your case.

Is that clear?

THE DEFENDANT: Yes.

THE COURT: Even after the judge decides what the guideline range in your case should be, he might

decide that it would be more reasonable and appropriate to impose a sentence outside of the guideline range, perhaps shorter but also perhaps longer.

Do you understand that as well?

THE DEFENDANT: Yes.

THE COURT: If Judge Johnson decides to sentence you to prison for 63 months, five years and three months, or less, you will have no right to raise any legal challenge to any aspect of your case.

Even if you are sentenced to more than 63 months, you'll have no right to say you don't want to plead guilty anymore and no right to say that you want to challenge the legality of your conviction.

The only right which will be triggered by a sentence in excess of 63 months is a right to ask a higher court to review the reasonableness of Judge Johnson's decision to impose such a long sentence on you.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You may have heard of parole. Parole is a program of early release from a prison sentence but it is not available in federal court to defendants sentenced by federal judges. It is only available in state court.

So whatever sentence you receive you will not be

released early on parole from it.

Is that clear to you?

THE DEFENDANT: Yes.

THE COURT: If you decide to go forward today and you change your mind in the future, it could be too late, because Judge Johnson has the authority to accept and hold you to your plea of guilty based upon the record of this proceeding without hearing anything further from you.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions you would like to ask me or discuss privately with your lawyer about your rights, the charges, the penalties or anything else before we go forward?

THE DEFENDANT: No.

THE COURT: Everything I've told you today is clear?

THE DEFENDANT: Yes.

THE COURT: Are you confident that you've had enough time to make up your mind?

You are very young and this is going to affect you for the rest of you're life.

THE DEFENDANT: Yes.

THE COURT: Are you ready to enter your plea?

THE DEFENDANT: Yes.

THE COURT: Mr. Auster, do you know of any reason why your client should not tender a plea of guilty pursuant to the terms of this agreement?

MR. AUSTER: No, your Honor. No your Honor, except --

If I just may. Your Honor was talking about 63 months. Shouldn't that really be 57 months?

MS. KAVANAUGH: No. 63 months is the --

THE COURT: Paragraph 4.

MR. AUSTER: Oh, I'm sorry.

THE COURT: Okay.

Are you aware of any defense to the charges that would cause you to counsel your client not to proceed under this agreement?

MR. AUSTER: No.

THE COURT: Mr. Alston, with respect to the lesser included offense within Count One, conspiring to distribute an unspecified amount of crack cocaine after November 2004 and before, how do you plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Are you making this guilty plea voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT: Has anybody threatened or pressured you or forced you in any way to offer this guilty plea?

THE DEFENDANT: No.

THE COURT: Other than what you've agreed to in writing with the government in your plea agreement, has anybody promised you anything in exchange for your guilty plea?

THE DEFENDANT: No.

THE COURT: Other than what I've told you about what the law permits Judge Johnson to do with respect to your sentence, has anyone promised you anything about what sentence Judge Johnson will set?

Tell me about what you did that makes you guilty of this offense?

THE DEFENDANT: I plead guilty to selling crack cocaine in my neighborhood projects.

THE COURT: Well, let's talk about that.

Were you part of a group of people that were working together to sell crack cocaine or were you doing this all by yourself?

MR. AUSTER: Do you understand?

THE COURT: You don't understand the question?

THE DEFENDANT: I plead guilty.

THE COURT: Well, I know you are pleading guilty but I have to understand what you were doing.

So I am not trying to embarrass you and I am not trying to make you feel like you're in trouble with anybody else, but I do need to understand what was in your mind and what you understood, so I can be satisfied that you are really guilty of this charge and not just saying so to get your case over with.

Are you with me?

THE DEFENDANT: Yes.

THE COURT: You said that you were selling crack cocaine.

THE DEFENDANT: Yes.

THE COURT: Now I need to know, were you doing it by yourself or were you working together with a group of other people who were also selling crack cocaine and working together as a team?

You are looking at me like you don't understand me.

MS. KAVANAUGH: Judge, if I could interject for a moment.

THE COURT: Go ahead.

MS. KAVANAUGH: Mr. Alston should understand that by agreeing that he was part of a group and part of a conspiracy, he's agreeing and pleading guilty to the elements of the crime, but that his statements are not going to be used against the other people.

I am not sure if that is part of the concern, that he is implicating the other people, or not. I am not sure if that is the issue.

THE COURT: Mr. Alston, once again, the count that you are being asked to plead guilty to by the prosecutor is a charge of conspiracy. That means it is a charge that you were part of a group of people working together to distribute crack cocaine.

If you got ahold of some crack cocaine for yourself and you sold it to keep all the money, you got it, you bagged it, you found the purchaser, you made the deal and you kept the money, you are not guilty of a conspiracy. You might be guilty of Count Two but not of Count One; you shouldn't be pleading guilty to.

Are you understanding what I am saying to you?

THE DEFENDANT: Yes.

THE COURT: I am going to ask you again.

You've told me that you were selling crack cocaine. I want to know whether you were acting alone or whether you were part of a group of people working together to distribute crack cocaine in the housing project?

THE DEFENDANT: I was part of a group of people.

THE COURT: What was your specific role? Were you a watcher? Were you delivering crack? Were you

taking money?

What were you doing?

THE DEFENDANT: I was selling.

THE COURT: You were selling.

THE DEFENDANT: Yes.

THE COURT: And were you receiving the crack from other people and sharing the profits from the sales with them?

THE DEFENDANT : Yes.

THE COURT: When you were selling the crack cocaine, did you understand in your mind that the product you were selling was in fact illegal narcotics?

THE DEFENDANT: Yes.

THE COURT: Where were you when you were making these sales?

THE DEFENDANT: In a place they call (inaudible).

THE COURT: And what borough is that in?

THE DEFENDANT: Queens.

THE COURT: Over what period of time did you make these sales?

Did you make some of these sales in December of 2004 and January of 2005?

THE DEFENDANT: Yes.

Excuse me.

MR. AUSTER: Excuse me.

(Defendant and counsel conferring).

THE COURT: Would you like a recess, Mr. Auster? I don't want to mind giving you one. I think this is an important day for your client.

Why don't you take the time you need. Is that all right, marshal? You have the time?

THE MARSHAL: Yes, sure.

THE COURT: I want everybody to be comfortable with what's happening. I don't want to ram anything down anybody's throat.

We'll take a recess and we'll take the time it takes. If the marshals can't keep him up here right now because they are needed someplace else, we will do it later today when their schedule can accommodate.

THE MARSHAL: Give me a call when you're ready.

THE COURT: I want him to be part of this conversation. If you have to be someplace else, then we'll put this off until later today when you can be here. I don't care if it is the last matter of the day at night. If you can stay here so he can participate in this conversation, that's even better.

THE MARSHA1: All right.

(Continued on the next page.)

(In open court)

(Second call).

THE LAW CLERK: All rise.

Criminal cause for guilty plea continued.

THE COURT: Let the record reflect that we've had a recess of about 15 minutes.

Mr. Auster, have you and your client had an opportunity to discuss whatever was on your client's mind before we broke?

MR. AUSTER: Yes, your Honor.

THE COURT: Is your client still prepared to proceed.

MR. AUSTER: He is, your Honor.

THE COURT: I must confess that I have been concerned about the portion of what I overheard which was a concern about whether or not Mr. Alston was involved in any actions in furtherance of the conspiracy after he reached the age of adulthood. That remains my concern.

How does Mr. Alston wish to address it?

MR. AUSTER: Your Honor, when the Court asked him before whether or not he was involved in sales in December and January, he said he did. That was a misstatement. He was not actually involved in the actual transfer of money and drugs in December and January. He no longer worked in that capacity.

He indicates to me now he was like a steerer. He was on the street with others --

THE COURT: In other words.

MR. AUSTER: He was --

THE COURT: He was --

MR. AUSTER: Sorry.

THE COURT: I just don't want you to --

MR. AUSTER: -- put the words in his mouth?

THE COURT: Yes, or to make admissions on his behalf that might be usable.

Is he prepared to allocute to participating actively in the conspiracy after he reached the age of majority in some capacity?

MR. AUSTER: I believe so.

THE COURT: And Ms. Kavanaugh, is that your understanding as well?

MS. KAVANAUGH: Judge, I have no concerns about that.

I understand, and as the Court will remember, we were actually here before, and Mr. Alston's father has been quite involved, appropriately so given this defendant's age.

I would also just note for the record that a lot of the concerns, which is the reason why we took a break, came from Mr. Alston's father, and while it is true, we do

not have direct undercover sales that were -- we do have direct undercover sales against this defendant prior to his 18th birthday, we would be able to prove at trial that he continued in an active role in the conspiracy and I believe after --

THE COURT: Through witness testimony?

MS. KAVANAUGH: Yes, your Honor. I believe through the extensive discussions that have been ongoing as of up to two minutes ago, that we're prepared to go forward.

THE COURT: Thank you.

Mr. Alston, before we broke, I asked you what your role was in the conspiracy. You admitted participating in, and you told me, that your role involved making sales of what you knew to be illegal narcotics, working together with others and sharing the profits from those sales.

I then asked you if you made any of those sales during December of 2004 and January of 2005. Although you answered yes, that led to a discussion where I understand from your lawyer that you wish to change that response.

What would you like to tell me about what was going on in December of 2004 and January of 2005?

THE DEFENDANT: I was actively selling. I was selling (inaudible) by steering.

THE COURT: You were steering?

THE DEFENDANT: Yes.

THE COURT: By steering, do you mean that when you saw people in the neighborhood that you believed to be interested in buying crack cocaine, you directed them to a location where they could do so knowing that other people you were working with had crack cocaine to sell at those locations?

THE DEFENDANT: Yes.

THE COURT: And did you understand that to be part of your job in this group of people working together to sell crack cocaine in the neighborhood?

THE DEFENDANT: Yes.

THE COURT: And that happened in December '05 and January '50 in Queens, New York?

THE DEFENDANT: Yes.

THE COURT: During the time after we broke and before we reconvened in court --

THE DEFENDANT: Yes.

THE COURT: -- when you were discussing this case with your lawyer and your father, did anybody promise you anything in return for going forward with this guilty plea or anything about the sentence Judge Johnson would set?

THE DEFENDANT: No.

THE COURT: Are you still acting voluntarily

and of your own free will?

THE DEFENDANT: Yes.

THE COURT: Do you stand by what you just told me?

THE DEFENDANT: Yes.

THE COURT: Counsel, are you aware of any reason why I should not accept your client's plea of guilty?

MR. AUSTER: No, your Honor.

THE COURT: Is the prosecution satisfied with the allocution as it stands?

MS. KAVANAUGH: The government is satisfied, your Honor.

THE COURT: Based on the information given to me, I find that the defendant, Darryn Alston, is acting voluntarily, that he guilty understands his rights and the consequences of his plea and that it is based upon fact. I therefore recommend to Judge Johnson he accept this defendant's plea of guilty to the lesser-included offense within Count One described in his plea agreement.

Between today and sentencing, which will be set by probation, Mr. Alston, you are going to be interviewed by a probation officer.

The reason for that interview will be to help the officer prepare that report I told you Judge Johnson would use to decide what the appropriate sentence in your

case should be. So it is critical that you be cooperative and candid with the probation officer during the interview.

Counsel, is there anything else for my attention today?

MS. KAVANAUGH: No, your Honor. Thank you very much for your patience.

THE COURT: Sure.

I certify to the best of my ability that the foregoing transcript is a true and accurate transcription of the audible portions of the electronic sound recording of the proceedings in the above-entitled matter.

Courthouse Transcription Service, Inc.